IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BELIGH SRAIEB, | ) |
| | ) |
| Plaintiff, | ) No. 09 C 858 |
| | ) |
| v. | ) Judge Ruben Castillo |
| | ) |
| AMERICAN AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Beligh Sraieb ("Plaintiff") brings this action to address alleged unlawful employment practices by American Airlines, Inc. ("Defendant"). Plaintiff alleges religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (R. 36, First Am. Compl.) Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (R. 52, Def.'s Mot for Summ. J ("Def.'s Mot.").) For the reasons stated below, the motion for summary judgment is granted.

## RELEVANT FACTS[1]

Plaintiff is a Muslim Shia. (R. 54, Def.'s Facts ¶ 35.) He began working for Defendant in May 1998 as a flight attendant and also became a member of the Association of Professional Flight Attendants (the "Union"). (*Id.* ¶¶ 4, 7.) Defendant and the Union are parties to a collective bargaining agreement ("CBA") that covers Defendant's flight attendants. (*Id.* ¶ 9.) Pursuant to the CBA, flight attendants submit monthly bids for their flight selection preferences

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 54, Def.'s Local Rule 56.1 Statement of Material Facts ("Def.'s Facts"); R. 62, Pl.'s Local Rule 56.1 Statement of Material Facts ("Pl.'s Facts").)

1

and trip selections are awarded based on the individual's preferences and length of service.[2] (*Id.* ¶¶ 17-18.) In addition, there is a real time, computerized system called "Trip Trading with Open Time" ("TTOT"), through which flight attendants can exchange trips with other flight attendants or relinquish their trips. (*Id.* ¶ 19.)

In November 2003, following the birth of his daughter, Plaintiff became more devoted to his religious practices, including observing the Muslim holy month of Ramadan. (*Id.* ¶¶ 36-37.) During Ramadan, Plaintiff alleges that he was required to start and break his daily fast in the same time zone and to refrain from handling alcohol. (*Id.* ¶ 39.) Accordingly, beginning in 2004 and continuing through 2007, Plaintiff alleges that he sought a religious accommodation from Defendant to work in a ground assignment so that he could properly observe Ramadan.[3] (R. 62, Pl.'s Facts ¶¶ 69, 71, 74-75.) Plaintiff claims that Defendant denied his requests and that he was told that the only accommodation available to him was a month off without pay. (*Id.* ¶¶ 69, 71-74, 77.) Although Defendant claims that its supervisory employees Michael Hughes ("Hughes"), Richard Ventimiglia ("Ventimiglia") and Heather Wilson ("Wilson") did not recall having such conversations with Plaintiff about his need for a ground assignment, it admits that Plaintiff was offered a month off without pay as an accommodation for Ramadan.[4] (R. 69, Def.'s Rule 56.1

---

[2] Plaintiff generally objects to all factual paragraphs that reference the CBA as "vague factual assertions without any context or explanation" but does not dispute that the paragraphs accurately summarize the portions of the CBA. (R. 62, Pl.'s Facts ¶¶ 11-19.)

[3] In late October 2004, Plaintiff was in a car accident which resulted in a broken finger. (R. 62, Pl.'s Facts ¶ 70.) As a result of the accident, Defendant gave Plaintiff a ground assignment during Ramadan 2004 because of his physical injuries, not as a religious accommodation. (*Id.*)

[4] Hughes testified that the only conversation he had with Plaintiff about a religious accommodation was in October 2007. (R. 69, Def.'s Rule 56.1 Resp. ¶ 74.)

2

Resp. ¶¶ 69, 71-74, 77.)

In the summer of 2007, Plaintiff applied to work at a computer software company, Agentrics, and was offered a full-time position. (R. 54, Def.'s Facts ¶¶ 53-54.) On October 3, 2007, Plaintiff accepted the offer and informed Agentrics that he would begin work on November 1, 2007. (*Id.* ¶ 54.) Plaintiff voluntarily picked up a trip with Defendant to fly to Boston on October 31, 2007. (*Id.* ¶ 55.) During this trip, Plaintiff claimed to have suffered an on-the-job injury. (*Id.* ¶ 56.) As a result of the injury, Defendant placed Plaintiff on an "injury-on-duty leave of absence" from October 31, 2007 to January 5, 2008. (*Id.* ¶ 54.) Although he never received permission from Defendant, on November 1, 2007, Plaintiff began working for Agentrics.[5] (*Id.* ¶¶ 58-59.)

Pursuant to the recommendation of his psychologist, Dr. Neal Kirschenbaum's ("Dr. Kirschenbaum"), Plaintiff claims that beginning in January 2008, he was unable to return to his job as a flight attendant with Defendant because his "emotional health could be jeopardized."[6] (R. 62, Pl.'s Facts ¶ 85.) On January 26, 2009, Defendant sent Plaintiff a letter advising him that his employment was terminated after he failed to supply medical documentation to substantiate his leave of absence. (*Id.* ¶ 101.) Plaintiff continued working for Agentrics until he resigned in February 2009. (R. 54, Def.'s Facts ¶ 58.)

---

[5] Article 19.J of the CBA provides: "Flight Attendants who engage in gainful employment for someone other than [Defendant] while on leave of absence without prior written permission from [Defendant] shall be deemed to have resigned from [Defendant's] services and, therefore, their names shall be stricken from the Flight Attendant System Seniority List." (R. 54-1, Def.'s App., Ex. 1, CBA at 19.J.)

[6] In January 2008, Dr. Kirschenbaum diagnosed Plaintiff with "Adjustment Disorder with Mixed Anxiety and Depressed mood, with moderate to severe symptoms." (R. 62, Pl.'s Facts ¶ 83.)

## PROCEDURAL HISTORY

On February 11, 2009, Plaintiff filed a two-count complaint against Defendant alleging religious and racial discrimination. (R. 1, Compl. ¶¶ 14-36.) On October 23, 2009, Plaintiff amended his complaint to a single religious discrimination action. (R. 36, First Am. Compl.) Subsequently, on November 25, 2009, Defendant moved for summary judgment. (R. 52, Def.'s Mot.) Defendant argues that it is entitled to summary judgment because: (1) the complaint is time-barred, (2) Plaintiff cannot establish the essential elements of his case, and/or (3) Plaintiff admits that Defendant offered to accommodate his alleged religious practices. (R. 53, Def.'s Mem. at 1.) In addition, Defendant argues that Plaintiff cannot establish any damages in this case. (*Id.*)

## LEGAL STANDARDS

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial."

4

Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Wheeler*, 539 F.3d at 634.

## ANALYSIS

### I. Timeliness

Defendant first argues that Plaintiff's claim is "inescapably time-barred." (R. 53, Def.'s Mem. at 5.) EEOC charges must be brought on Title VII claims within 300 days of an alleged violation. *See* 42 U.S.C. § 2000e-5(e)(1). The statute of limitations period begins to run when the discrimination occurs. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 721 (7th Cir. 2004). In this case, Plaintiff filed his EEOC charge on July 18, 2008, 309 days after the start of Ramadan 2007.[7] (R. 54, Def.'s Facts ¶ 38, 61.) Citing his August 20, 2009 deposition testimony, Defendant argues that Plaintiff's request for a ground assignment was made and rejected before

---

[7] Plaintiff does not dispute that in 2007, Ramadan began on September 13. (R. 61, Pl.'s Resp. at 3.)

Ramadan 2007 began and therefore his claim is barred by the statute of limitations.[8] (R. 53, Def.'s Mem. at 5-6.) However, Plaintiff submitted a declaration in which he desired to "clarify certain facts" and "supplement the record" regarding his August 20, 2009 deposition testimony. (R. 63, Pl.'s Exs., Ex. H - Decl. of Pl. ¶ 2.) In that declaration, Plaintiff states that after reviewing a letter that he wrote on December 2, 2007, in which he describes Defendant's alleged accommodation denials, he now recalls that he requested a ground assignment *during* Ramadan 2007 and that his request was denied a month later.[9] (*Id.* ¶¶ 4, 5.)

Generally, a plaintiff cannot create an issue of material fact by submitting an affidavit that

---

[8] Specifically, Plaintiff gave the following deposition testimony on August 20, 2009:
- Q. Okay. All right. Now, you said that you - - that you requested the accommodation from [] Hughes a week or two prior to the beginning of Ramadan?
- A. Mm-hmm.
- Q. Right? So that would have been somewhere around September 4th or at the end of August?
- A. August. Probably, towards September, beginning of September.
- Q. Beginning of September?
- A. Yes.
- Q. And a few days later he told you that your - - you would not be accommodated; is that right?
- A. Yeah. Due to the fact they didn't have open positions.
- Q. Okay. So you learned that in the beginning of September? You learned that you would not be accommodated in the beginning of September?
- A. Yes.
- Q. All right. And that was before the start of Ramadan; is that right?
- A. Yes, ma'am.

(R. 54-2, Def.'s App., Ex. D - Pl.'s Dep. at 136:6-137:4.)

[9] Defendant argues that the December 2 letter (and the EEOC charge) are inadmissable hearsay and may not be used to defeat summary judgment. (R. 67, Def.'s Reply at 3.) Plaintiff, however, is not seeking to introduce the letter; he only used it to refresh his recollection. In opposing summary judgment, Plaintiff relies on his affidavit, which indicates testimony that he "would competently testify" to under sworn oath. (*See* R. 63, Pl.'s Exs., Ex. H - Decl. of Pl.) Such affidavits are admissible in summary judgment proceedings. *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008).

contradicts an earlier deposition. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006) (citation omitted); *see also Patton v. MFS/Sun Life Financial Dist., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007) (citation omitted) ("When a witness abandons her testimony in the face of a pending summary judgment motion, the change is often a transparent ruse designed to prolong the case; allowing the ruse to succeed would defeat summary judgment's purpose of weeding out clearly unmeritorious cases."). Therefore, the affidavit should be disregarded "unless it is demonstrable that the statement in the deposition was mistaken." *Pourghoraishi*, 449 F.3d at 759. The Seventh Circuit has identified a number of scenarios that could plausibly explain a change in testimony such as: a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered, or ambiguous or incomplete earlier testimony. *Patton*, 480 F.3d at 488 (citations omitted). Consequently, a court must determine whether the change in testimony is "plainly incredible or merely creates a credibility issue for the jury." *Id.*

Here, Plaintiff argues that "the lapse in memory during his deposition plausibly resulted in mistaken assertions." (R. 61, Pl.'s Resp.) He claims that due to the number of times that he requested accommodations for Ramadan from 2004 through 2007, he had difficulty remembering the specific request that he made in 2007 during the deposition. (R. 63, Pl.'s Exs., Ex. H - Decl. of Pl. ¶ 6.) Given that the deposition occurred two years after the incident and that Plaintiff alleged several instances when he requested accommodation from Defendant, a reasonable finder of fact could conclude that Plaintiff's deposition testimony with regard to the 2007 incident was mistaken and that December 2007 letter accurately refreshed his memory. *See Patton*, 480 F.3d at 488. Therefore, Plaintiff's explanation is not "plainly incredible." Accordingly, whether Plaintiff requested an accommodation during or before Ramadan 2007 is an issue left for the trier

7

of fact and the claim is not "inescapably time-barred."

## II.  Prima Facie Case

Next, Defendant argues that even if Plaintiff's claim is not time-barred, the claim fails as a matter of law because Plaintiff cannot establish his *prima facie* case. (R. 53, Def.'s Mot. at 6.) To establish a *prima facie* case of religious discrimination under Title VII, a plaintiff must show that: (1) a bona fide religious practice conflicts with an employment requirement; (2) that he called the religious practice to his employer's attention; and (3) that the religious practice was the basis for an adverse employment decision. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 n.2 (7th Cir. 2001); *Lord Osunfarian Xodus v. Wackenhut Corp.*, 626 F. Supp. 2d 861, 864 (N.D. Ill. 2009).

Defendant argues that Plaintiff cannot establish that he suffered an adverse employment action. (R. 53, Def.'s Mot. at 9.) An adverse employment action "must materially alter the terms and conditions of employment." *Whittaker v. U. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (citation omitted). Although the Seventh Circuit defines "adverse employment action" quite broadly, "not everything that makes an employee unhappy is an actionable adverse action." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (citation omitted). Rather, for an employment decision to be actionable, "it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Id.*

Here, Plaintiff alleges that he suffered from "severe anxiety and panic attacks" as a result of "not being able to adhere to his religious beliefs" and the "discriminatory conduct he experienced." (R. 36, First Am. Compl. ¶ 24.) As a result of his "severe psychological illness"

8

Plaintiff alleges that he could not return to his employment with Defendant in January 2008, resulting in "substantial loss wages." (*Id.* ¶ 25.) Plaintiff argues that this "forced leave of absence" presents a sufficiently adverse action to sustain his claim because "a reasonable juror could find that Defendant's refusal to accommodate Plaintiff's religious practices forced him to take an unpaid leave of absence, which ultimately led to his discharge." (R. 61, Pl.'s Resp. at 7-9.)

As an initial matter, the Seventh Circuit has never recognized a "constructive imposition of medical leave" as an adverse employment action. Nonetheless, Plaintiff argues that his leave of absence is similar to a constructive discharge and should be analyzed using the same test. (*Id.* at 8.) The Seventh Circuit, however, sets "a high bar" to establish a constructive discharge, because in the ordinary case an employee is expected to remain employed while seeking redress. *Bourmehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). The plaintiff "must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639 (7th Cir. 2009) (citation omitted). The alleged working conditions "must be even more egregious than those that would support a finding of a hostile work environment." *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1035-36 (7th Cir. 2006).

Plaintiff argues that based on his testimony and the medical testimony of Dr. Kirschenbaum, he is able to meet this burden and establish an adverse employment action. (R. 61, Pl.'s Resp. at 8.) However, "the existence of a materially adverse employment action is based on the objective conduct of the employer rather than the subjective, psychic response of the employee." *Mirza v. Neiman Marcus Group, Inc.*, 649 F. Supp. 2d 837, 858 (N.D. Ill. 2009).

9

Plaintiff merely alleges that Defendant denied his request for a ground assignment during Ramadan. (R. 36, First Am. Compl.) This does not meet the "high standard" required by the Seventh Circuit for a constructive discharge. *See, e.g., Robinson v. Sappington*, 351 F.3d 317, 337 (7th Cir. 2003) (determining that a jury could conclude that there was a constructive discharge where employee was subjected to repeated sexual remarks and physically threatening conduct); *Taylor v. W.S. Life Ins. Co.*, 966 F.2d 1188, 1199 (7th Cir. 1992) (determining that a jury could find constructive discharge where plaintiff's boss made racist comments, brandished a pistol, and held it to one plaintiff's head).

Furthermore, even if the Court were to find that his alleged "constructive imposition of medical leave" represented an adverse employment action, Article 19.J of the CBA makes it clear that flight attendants who work for another employer while on leave of absence from Defendant are deemed to have resigned. (*See* R. 54-1, Def.'s App., Ex. 1, CBA at 19.J.) Therefore, Plaintiff effectively resigned his employment with Defendant on November 1, 2007, when he began working for Agentrics while on leave of absence. (R. 54, Def.'s Facts ¶¶ 57-59.) Plaintiff argues that this resignation was ineffective because Defendant "failed to advise Plaintiff of its policies or implement them in any meaningful manner." (R. 61, Pl.'s Resp. at 11.) Plaintiff, however, was a member of the Union and therefore was bound by the terms of the CBA. *See Pryner v. Tractor Supply Co.*, 109 F.3d 354, 362 (7th Cir. 1997) ("An agreement negotiated by the union elected by a majority of the workers in the bargaining unit binds all members of the

unit . . . .").[10] Accordingly, his legally effective resignation prohibits him from demonstrating that he suffered an adverse employment action through a constructive discharge theory.

In sum, Plaintiff's decision to start working for Agentrics on November 1, 2007, dooms this case. Plaintiff cannot prove that he suffered an adverse employment decision and therefore he is unable to establish his *prima facie* case.[11]

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (R. 52) is GRANTED. The clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff.

Entered:

Judge Ruben Castillo
United States District Court

**Dated: January 25, 2010**

---

[10] Further, Plaintiff has not created a factual issue as to whether Defendant "inconsistently" administered this policy, as there is no evidence that any other flight attendant worked another job while on leave of absence without notifying Defendant. Plaintiff asserts that he "regularly held second jobs throughout his tenure with Defendant" and that Wilson worked a second job without seeking permission from Defendant. (R. 62, Pl.'s Facts ¶ 102.) However, neither situation involved an employee working a second job while on leave of absence and are therefore inapplicable to the issue at hand.

[11] The Court need not consider the other arguments raised in Defendant's motion for summary judgment. (*See* R. 53, Def.'s Mem.)